**STATE of Delaware, Plaintiff Below, Appellant,**

v.

**Timothy MEADES, Defendant Below, Appellee.**

No. 271, 2007.

Supreme Court of Delaware.

Submitted: Feb. 20, 2008.

Decided: May 6, 2008.

Paul R. Wallace, Esquire, Department of Justice, Wilmington, DE, for Appellant.

Robert M. Goff, Jr., Esquire, Office of the Public Defender, Wilmington, DE, for Appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

BERGER, Justice:

In this appeal, the State seeks review of a Superior Court decision suppressing drug evidence. The trial court decided that the police violated the defendant's Fourth Amendment rights because, when they detained the defendant, the police lacked a reasonable articulable suspicion that the defendant had committed, was committing, or was about to commit, a crime. The State contends that the defendant was not detained and that the police do not need to have any suspicion of criminal activity when they simply approach a person and ask some questions. Because this argument was not fairly presented to the trial court, however, we decline to consider it on appeal. Therefore, based on the premise that the defendant was detained, we conclude that the trial court properly suppressed the drug evidence.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 12, 2006, Vincent Jordan, Sean Connor, and two other Wilmington Police officers investigated a tip that individuals were selling crack cocaine at a specified house. When they arrived at the house, they saw Timothy J. Meades and William Rollins sitting on the front steps. Jordan approached the men, asked their names and whether they lived in the house. Both men gave the officer their names and said that they did not live there. They also provided identification, as requested. The two men consented to a pat down after

telling Jordan that they did not possess any contraband. During the pat down, Jordan felt an object in Meades' buttocks, but he did not ask Meades to remove it.

While Jordan was talking to Meades and Rollins, Connor ran a warrant check and learned that there was an outstanding warrant for Meades. The officers arrested Meades, and later determined that the object in Meades' buttocks was a bag of crack cocaine. The State charged Meades with possession with intent to deliver cocaine and possession of cocaine within 1000 feet of a school.

Meades moved to suppress the drug evidence and the trial court held a hearing at which Jordan and another responding officer testified. At the end of the hearing, the trial court stated that it found the officers very credible, but the court reserved decision in order to give the parties an opportunity to present additional authorities or argument. Three days later, the trial court issued a letter decision granting the motion to suppress. The State certified that the suppressed evidence was essential to the prosecution of the charges, and the indictment was dismissed pursuant to 10 *Del. C.* § 9902(b). This appeal followed.

### DISCUSSION

■ The State argues that Meades was not "seized" when the officers approached him and asked for his name. A person is seized if the nature of the police contact would lead a reasonable person to believe that he is not "free to ignore the police presence."[1] Both our State and federal constitutions prohibit unreasonable searches and seizures.[2] Thus, the police must have a constitutionally valid basis to seize an individual.

■ When the seizure is a brief detention, or "stop," § 1902 requires that the officer have a "reasonable ground to suspect [that the person being stopped] is committing, has committed, or is about to commit a crime...."[3] But, as the State points out, not every interaction between the police and a member of the public involves a seizure,[4] and this Court has recognized that "mere police questioning does not constitute a seizure."[5] The State argues that the interaction between the police and Meades was "mere questioning" that did not involve a seizure. If there was no seizure, then § 1902 would not govern the police conduct, and it would not matter whether or not the police had a reasonable articulable suspicion of criminal activity.

The State's sole argument on appeal is that the trial court erred in relying on § 1902. Instead, it says the trial court should have applied the analysis used in *Ross v. State*, where this Court determined that the police had not seized the defendant when they repeatedly asked to talk to him as the defendant was walking away.[6] The problem with this argument is that it was not presented to the trial court.[7]

During the suppression hearing, Jordan testified that the tip about Meades' drug

---

1. *Jones v. State*, 745 A.2d 856, 868 (Del.1999).

2. U.S. Const. Amend. IV; Del. Const. art. I, § 6.

3. 11 *Del. C.* § 1902(a).

4. *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

5. *Ross v. State*, 925 A.2d 489 (Del.2007).

6. *Id.* at 494.

7. We note that *Ross* was decided approximately one week after the trial court's decision in this case. Thus, the State could not have argued *Ross*, as such. The principles *Ross* discussed, however, had been established many years earlier under State and federal law.

activity came from someone who was not a past proven reliable informant. He also testified that, but for the confidential informant's tip, he had no reason to stop Meades. After the State rested, the trial court explained its thinking:

THE COURT: Let me tell you where I am. I find these officers very credible. That having been said, I'm troubled by Jones versus State, where an anonymous tip about a black individual wearing something, selling drugs was not enough. So I am focusing on not whether or not I believe the officers, because I do. I'm focusing on whether or not they had the legal grounds under 1902 to ask these people for their names.

\* \* \*

THE COURT: I want to give you the opportunity to take a look at that case [*Jones*] and any other case you think, but that's my sticking point.... I just think that under 1902 all the case law says it has to be strictly adhered to because it is a detention. And I'm not sure, given the body of case law out there, that this was enough.

So, I'll give you the benefit of where I am right now. But I'm happy to read anything you want to submit.

\* \* \*

DEFENSE COUNSEL: And so we understand the parameters of what we would be discussing....

THE COURT: Yes, if you're aware of any other cases. That's the one I'm focusing on.

DEFENSE COUNSEL: You have made a determination that a reasonable person in his position would believe that they were not free to go. That has already been decided by you, so I'm not going to argue that.

\* \* \*

THE COURT: ... The way I analyze the problem is, the State has to have— the police have to have reasonable, articulable suspicion that he has committed, is committing or is about to commit a crime. And the question is, does the information provided by the confidential informant and their observations rise to that level. If they don't, then anything he says pursuant to their stop under 1902 would have to be excluded, evidence and statements.[8]

After the hearing, the State submitted a letter, and a copy of this Court's decision in *Miller v. State*,[9] arguing that the police were justified in approaching Meades on suspicion of loitering. The State made only one, indirect, reference to the inapplicability of § 1902 in the next to last sentence of its letter: "[Officer Jordan's] approach would not constitute a show of force that would convey to the defendant that he was not free to leave...." Not surprisingly, the trial court's decision addressed only one issue—whether the police had a reasonable articulable suspicion that justified Meades' detention under § 1902. Based on the officers' testimony, the court held that they did not.

Supreme Court Rule 8 limits appellate review to "questions fairly presented to the trial court...." Although the rule includes an exception, allowing review "in the interests of justice," we find no compelling reason to invoke that exception. Trial courts frequently make evidentiary rulings under severe time constraints, without the benefit of careful briefing. In this case, the trial court explained its preliminary thinking on the issue and asked for additional input from the parties. The State responded by presenting a new theory—that the police had a reasonable suspicion that Meades was committing the

---

**8.** Suppression Hearing Transcript, 44–49.

**9.** 922 A.2d 1158 (Del.2007).

crime of loitering. If the State wanted to argue that there was no detention and that § 1902 was inapplicable, it had ample opportunity. Having failed to do so, the State is precluded from presenting that theory on appeal.

■ Thus, in analyzing the trial court's decision granting the motion to suppress, we accept, without review, its finding that Meades was detained and that § 1902, therefore, was applicable. Under settled law, the police were required to demonstrate a reasonable articulable suspicion of criminal activity. The record amply supports the trial court's finding that the police had no suspicion of any wrongdoing. Based on that finding, we conclude that the trial court did not abuse its discretion in granting the motion to suppress.

CONCLUSION

Based on the foregoing, the judgment of the Superior Court is affirmed.